# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVEREST BIOSYNTHESIS GROUP, LLC, dba NATURAL PLANT EXTRACTS,<br><br>Plaintiff,<br><br>v.<br><br>BIOSYNTHESIS PHARMA GROUP LIMITED; BIOSYNTHESIS PHARMA LTD; JAYTEE BIOSCIENCES, LTD; TRIGAL PHARMA LTD; IEFENBACHER API GMBH; HANKANG BIO-TECH CO.; BSPG LABORATORIES LTD; SPG AUSTRIA GMBH; and MICHAEL STEPHENSON,<br><br>Defendants. | CASE NO. 17cv1466 JM(BGS)<br><br>ORDER GRANTING MOTION TO COMPEL ARBITRATION; STAYING ACTION |

Defendants Biosynthesis Pharma Group Limited ("BSPG"); Trigal Pharma Ltd; Hankang Bio-tech Co.; BSPG Laboratories Ltd; and Michael Stephenson ("Stephenson") move to compel arbitration of the claims asserted by Plaintiff Everest Biosynthesis Group, dba Natural Plant Extract, ("Everest") against the signatory of the arbitration provision at issue, BSPG, and to stay the action as to all other Defendants pending resolution of the arbitration proceeding. Plaintiff opposes the motion. Pursuant to Local Rule 7.1(d)(1), the court finds the matters presented appropriate for resolution without oral argument. For the reasons set forth below, the court grants the motion to compel arbitration of Plaintiff's claims against BSPG, and stays the action

as to the remainder of the Defendants pending conclusion of the anticipated arbitration proceeding. The parties are also instructed to file a joint status report on the status of the arbitration proceeding by June 1, 2018.

**BACKGROUND**

On July 20, 2017, Plaintiff, a citizen of California, commenced this diversity action by alleging two claims for fraud and unfair business practices in violation of Bus & Prof Code §17200 et seq. Plaintiff's claims relate to an exclusive distributorship agreement entered into between Everest and BSPG, an entity organized and with its principal place of business in Hong Kong. Defendant Trigal Pharma Ltd. is an entity allegedly organized and with its principal place of business in Vienna, Austria; Hankang Bio-tech Ltd. is an entity allegedly organized and with its principal place of business in The Peoples Republic of China; BSPG Laboratories Ltd. is an entity allegedly organized and with its principal place of business in the United Kingdom; and Michael Stephenson is an alleged resident of the United Kingdom and an officer and shareholder of the alleged defendant business entities. (Compl ¶¶2 - 10). Defendants Biosynthesis Pharma Limited, Jaytee Biosciences Ltd., Iefenbaacher API GmbH, and SPG Austria GmbH, all alleged foreign entities, have yet to appear in this action.

In April 2015, Plaintiff and BSPG entered into an Exclusive Distribution Agreement ("Agreement") for the distribution of cannabidol ("CBD") in the United States. CBD is an industrial hemp product used for homeopathic, holistic, and naturopathic purposes. CBD does not contain THC, an active ingredient in marijuana. Pursuant to the Agreement, Plaintiff paid $2 million for the exclusive right to distribute CBD in the United States. Defendant Stephenson allegedly represented that "his companies would turn over their existing clients in the United States to Plaintiff." (Compl. ¶14). The Agreement had a set purchase price of $30,000 per kilo of CBD, and a set sales price of not less than $40,000 per kilo.

Shortly after executing the Agreement, Plaintiff learned that Defendants had

distributed CBD to other companies in the United States. When confronted about the sale, Stephenson informed Plaintiff that the single shipment of CBD corresponded to an order placed before executing the Agreement. After this meeting, Plaintiff continued to be informed, and then discovered, that Defendants, collectively, continued to sell CBD in the United States.

When confronted about BSPG product sales by third parties, Defendant Stephenson stated that "enforcing any rights under the Agreement was the responsibility of Plaintiff." (Compl. ¶17). Plaintiff then began to send cease and desist letters to the several companies that were selling Defendants' products. In response, Defendants sent an email to Plaintiff unilaterally terminating the Agreement "without a factual basis." (Compl. ¶18).

Seeking to enforce its rights under the Agreement, Plaintiff commenced litigation in the Superior Court of San Diego County against Visage Pro USA, LLC to stop the unauthorized sale of CBD products produced by Defendants. In this litigation, Plaintiff allegedly learned the true facts "that Defendants never had any intent to provide an exclusive distributorship to Plaintiff." (Compl. ¶19). Plaintiff learned that Defendants continued to sell CBD in the United States before and during the period of exclusivity. Defendants allegedly made direct and continuous sales to Visage Pro USA and other vendors throughout the period of exclusivity in alleged violation of the Agreement. For example, one email from Defendant Stephenson, dated July 2, 2015, allegedly revealed Defendants' plan to continue to sell CBD to Visage Pro USA and to disguise the origins of the product to avoid detection by Plaintiff. (Compl. ¶24).

The Agreement provides for the arbitration of any and all disputes in Hong Kong. Defendants move to compel arbitration of the claims asserted against BSPG, and to stay the claims asserted against the remainder of the Defendants pending resolution of the arbitration proceedings. Plaintiff opposes the motion and claims the Agreement is void <u>ab initio</u> based upon a fraud in the execution theory.

# DISCUSSION

**The Arbitration Provision**

The Federal Arbitration Act ("FAA") provides that

> a written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising . . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract.

9 U.S.C. §2. The FAA establishes federal policy favoring arbitration of disputes. Federal courts are required to "rigorously" enforce the parties' agreement to arbitrate. Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987). Indeed, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983).

> [W]here a contract contains an arbitration clause, there is a presumption of arbitrability in a sense that [a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

A.T.&T. Tech. Inc. v. Communications Workers of America, 475 U.S. 643, 650 (1986) (citations omitted).

The FAA creates "a body of federal substantive law of arbitrability," enforceable in both state and federal courts and preempting any state laws or policies to the contrary. Moses H. Cone, 460 U.S. at 24. "The availability and validity of defenses against arbitration are therefore to be governed by application of federal standards." Cohen v. Wedbush, Noble, Cooke, Inc., 841 F.2d 282, 285 (9th Cir. 1988). This body of federal law also requires that federal courts apply state law, "whether of legislative or judicial origin [] if that law arose to govern issues concerning the validity, revocability and enforceability of contracts generally." Perry v. Thomas, 482 U.S. 483, 493, fn. 9 (1987).

This court's inquiry is a narrow one, limited to determining whether the

arbitration provision is enforceable. The court concludes that it is. The arbitration provision is clear and concise and evidences the parties' intent to arbitrate any and all disputes concerning the Agreement. Section 9.07 of the Agreement requires disputes "arising out of or in connection with" that contract to be resolved through arbitration. The Agreement provides:

> Any dispute arising out of or in connection with this Agreement, including any question regarding its existence, validity or termination, shall be referred to and finally resolved by arbitration under Hong Kong International Arbitration Centre (HKIAC) under the HKIAC Administered Arbitration Rules in force, when the Notice of Arbitration is submitted; which Rules are deemed to be incorporated by reference into this clause;
>
> (a) The number of arbitrators shall be two;
> (b) The seat, or legal place, of arbitration shall be Hong Kong SAR. The language to be used in the arbitral proceedings shall be English;
> (c) The governing law of the contract shall be the substantive law of Hong Kong.

(Compl. Exh. 1 ¶ 9.2). Plaintiff's claims for fraud and violation of Bus & Prof Code §17200 arise directly from the Agreement. In broad brush, Plaintiff alleges that the Agreement was a sham because BSPG made material misrepresentations regarding the exclusivity of the CBD sales territory while BSPG allegedly sold product within Plaintiff's exclusive territory. As the claims arise or relate to the Agreement, the court compels arbitration of Plaintiff's claims against BSPG.

**Fraud in the Execution of the Agreement**

In opposing the motion to compel arbitration, Plaintiff contends that Defendants engaged in fraud in the execution, and therefore the entire contract is void, including the arbitration provision. See <u>Duick v. Toyota Motorsales, U.S.A., Inc.</u>, 198 Cal.App.4th 1316, 1320 (12011). Plaintiff's argument is not persuasive because Plaintiff's fraud claims are "fraud in the inducement" of a contract, and not fraud in the "execution" of a contract. As explained in <u>Rosenthal v. Great Western Fin. Securities Corp.</u>, 14 Cal.4th 394, 415 (1996) (fraud in the execution voids the entire contract, including the arbitration provision), in the case of fraud in the execution,

> the fraud goes to the inception or execution of the agreement, so that the

> promisor is deceived as to the nature of his act, and actually does not know what he is signing, or does not intend to enter into a contract at all, mutual assent is lacking, and [the contract] is void. In such a case it may be disregarded without the necessity of rescission.

(quoting Ford v. Shearson Lehman American Express, Inc., 180 Cal.App.3d 1011 (1986). Fraud in the inducement, by contrast, occurs when " the promisor knows what he is signing but his consent is induced by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is voidable. In order to escape from its obligations the aggrieved party must rescind." Id.

Here, Plaintiff clearly and unequivocally alleges that it negotiated with Defendants for the express purpose and intent to obtain an exclusive distributorship agreement for CBD. Moreover, the Complaint alleges that the parties to the Agreement conducted extensive research and discussions before executing the Agreement. (Compl. ¶¶12-15). The Complaint's allegations simply fail to give rise to an inference that Plaintiff, when it executed the Agreement, did not know that it entered into a contract at that time.

**Unconscionability**

The court also rejects Plaintiff's argument that the arbitration provision is unconscionable because "the contract was written to make it difficult for Plaintiff to pursue Defendants in litigation." (Oppo. at p.7:14-15).

Under California state law, the court may invalidate an unconscionable contract provision. Civil Code section 1670.5, subdivision (a) states: "If the court as a matter of law finds the contract or any clause of the contract to be unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."

Unconscionability has both a procedural and a substantive element. Stirlen v. Supercuts, Inc., 51 Cal.App.4th 1519, 1531 (1997). Both elements must be present for a contract or a clause therein to be invalidated, but they need not be present in the same degree. Armendariz v. Found Health Psychare Servs., 24 Cal.4th 83, 114 (2000);

Stirlen, 51 Cal.App.4th at 1533. A sliding scale is utilized so that, for example, the more substantively oppressive a contract is, the lesser the showing of procedural unconscionability is required to conclude the contract is unconscionable. Armendariz, 24 Cal.4th at 114.

Procedural Unconscionability

Procedural unconscionability is oppression or surprise arising out of unequal bargaining power, which results from a lack of real negotiations and the absence of meaningful choice. Stirlen, 51 Cal.App.4th at 1532. Procedural unconscionability often arises when the contract in question is one of adhesion. Id. at 1533. A contract of adhesion is a "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." Id.

Here, the contract is not one of adhesion and was bargained for by the parties. Several factors weigh against a finding of procedural unconscionability: (1) the parties negotiated the Agreement over an extended period of time and Plaintiff cannot now claim that it was surprised by the existence of the arbitration provision; (2) the amount of the Agreement ($2,000,000) is sufficient for the parties to have carefully considered the terms and conditions of the Agreement, including consultation with business and legal advisors; (3) Plaintiff intended to deal with BSPG, and not some other manufacturer of CBD; and (4) the amount of the contract and business plans of the parties reflect a level of sophistication and business planning indicative of sophisticated business entities. Finally, the court rejects Plaintiff's argument that the arbitration provision is procedurally unconscionable because it is a corporation "formed by a few young men just starting out in the business world." (Oppo. at p.7:23-24). Even assuming some of the shareholders of Plaintiff are young, Plaintiff fails to explain how this allegation is relevant, especially where there is no discussion as to Plaintiff's business experience, financial wherewithal, and other pertinent considerations.

<u>Substantive Unconscionability</u>

Substantive unconscionability arises when (1) the contract terms are so one-sided as to shock the conscience or (2) the contract terms imposed are harsh or oppressive. <u>Stirlen</u>, 51 Cal.App.4th at 1532. Plaintiff contends that the arbitration provision is substantively unconscionable because it calls for the arbitration to proceed in Hong Kong, and not the United States. Plaintiff sets forth no basis to conclude that arbitration in Hong Kong, a major global trading center, is so one-sided as to shock the conscience or is overly harsh or oppressive. The court concludes that the asserted grounds for substantive unconscionability are commonplace and insufficient to establish substantive unconscionability.

In sum, applying the <u>Armendariz</u> sliding scale, Plaintiff falls short of establishing the unconscionability of the arbitration provision.

In conclusion, the court grants the motion to compel arbitration of Plaintiff's claims against BSPG. The court also stays this action as to the remainder of the Defendants pending arbitration and instructs the parties to file a joint status report by June 1, 2018. The joint report should inform the court of the status of the arbitration proceeding.

**IT IS SO ORDERED.**

DATED: January 8, 2018

JEFFREY T. MILLER
United States District Judge

cc: All parties